## EQUEN ET AL. v. ARTERBURY ET AL.

[83 South. 406, In Banc.  No. 20858.]

1. DRAINAGE. *Legislature to provide for establishment.*

It is the province of the legislature to provide for the establishment of drainage districts and the authority, as well as the procedure, for the creation of the drainage district, is governed by the statute.

2. DRAINS. *Concurrent jurisdiction of courts in either of two counties to establish.*

Under Laws 1914, chapter 269, section 1, providing that if land in more than one county is embraced in a proposed drainage district, the application should be made to the chancery court of either county, and all proceedings should be had in such chancery court, does not withdraw jurisdiction to establish such a drainage district from a chancery court because proceedings had originally been instituted in the court of another county.

3. DRAINS. *Dismissal of petition not res judicata.*

The action of a chancery court in dismissing a drainage petition does not render the matter *res adjudicata* so as to preclude favorable action by the chancery court of another county on substantially the same petition, especially since Laws 1912, ch. 269, section 4, provides that engineers' reports, surveys, etc., in the first proceeding shall be paid for as part of the cost in a subsequent proceeding.

APPEAL from the chancery court of Leflore county.

Hon.. JOE MAY, Chancellor.

Petition for the establishment of a drainage district by Thad Arterbury and others, opposed by J. S. Equen and others. From an interlocutory decree confirming the report of a commission, the opposing parties appeal.

The facts are fully stated in the opinon of the court.

*Noel & Jordan,* for appellant.

I will deal with but two aspects of the case leaving the presentation of authorities to the opening brief of appellants.

So far as I could gather from their brief, there was practically no attempt to meet the proposition and authorities supporting the contention that, Holmes county chancery court has exclusive jurisdiction. If there had been nothing else but the statute constituting chapter 195 of the Laws of 1912, as amended by chapters 269 and 271 of the Laws of 1914, our position on this point would be sustained.

Section 1, chapter 269, of the Laws of 1914, provides:

"If land in more than one county is embraced in the proposed district, the application shall be addressed to the chancery court of any county in such district; and all proceedings shall be had in such chancery court."

The first proceedings were in the chancery court of Holmes county and for a larger district. The second effort was under the same law and for the same lands, and being an action *in rem,* fixed the rights of all interested in such lands. All subsequent proceedings, if any were maintainable, should have been in the chancery court of Holmes.

Regardless of this statute, the authorities cited in appellant's opening brief for the position that the court of the county in which concurrent jurisdiction is given that first exercise such jurisdiction, retains exclusive jurisdiction, are unanswerable and no attempt is made to answer them or present counter authorities. Therefore, on this initial proposition, the exceptions and objections of appellants should be sustained and the proceedings dismissed.

The decree of the Holmes county chancery court is *res adjudicata.*. The subject-matter of controversy in

this suit, drainage for certain lands in Holmes, Leflore and Carroll counties is exactly the same subject-matter that was involved in the chancery litigation in Holmes county in which decree was rendered dismissing the petition, simply retaining jurisdiction for the purpose of apportioning and collecting costs. It was a proceeding, as is this, not to affect the petitioners or counter petitioners otherwise than by subjecting or relieving certain land of certain charges. It was strictly a proceeding *in rem,* affecting the lands and the lands only, regadless of their ownership. Therefore, the question of whether or not there has been some change in ownership between the time of the Holmes county suit and the institution of this suit is wholly immaterial. The sole question in each is whether or not a drainage district should be established embracing the lands in controversy and whether it was and is maintainable under the statutes above referred to, chapter 269 of the Laws of 1914, embracing the particular provisions in controversy.

The chancery court of Holmes county, after full and thorough investigation and after preliminary survey and report were made, evidence and argument heard, dismissed the bill, holding that while the establishment of the district might be for the advantage of owners of real property therein, that it was not for the public benefit. No appeal was taken from that decision and it stands now in full force.

The attempt to meet this decision on a drainage proposition that does not affect one acre in a thousand comparing it with a creation of public roads which touches every acre of land everywhere, is utterly untenable.

Every owner of land is entitled to an inlet and an outlet. Public roads are used by all occupants of lands everywhere and are an absolute necessity. If one proposition for creating a public road fails, it does

not defeat other propositions, under different circumstances, for the necessity for public roads remains and must be met in some way, otherwise the ownership of land is valueless, lands hemmed in with no means of ingress or egress are prisons, places of punishment and not a profit or pleasure. Drainage, in the sense used in the drainage laws consisting of large drainage ditches covering different counties or portion of one county are questions that do not affect one per cent of the cultivated lands in this state, are not necessities and may be a deteriment, as in this case, to adjoining land-owners and so determined by the courts, even if not otherwise than greatly beneficial to the owners of the territory in the district. To hold that the decisions supporting this view of the law mean nothing, and that one suit can be instituted as soon as another is finished, covering the same subject-matter, law and persons, seems to me utterly untenable.

The requirement of the decree and the law that drainage maps and other parts of the record of drainage contests should be preserved, indicate no purpose of making the decision otherwise than final. In all land cases, final records are required to be preserved. The maps and drainage data, showing the levels of the lands, would be worth something to the owners of the property who paid for it, even if the suit is dismissed; of course, the maps and other records should be preserved for in this way only could the plea of res adjudicata be sustained and some return he had for outlays incident to the survey which is made a tax on all of the lands.

Pleadings of appellants are proper and legal. Very few chapters covering proceedings of drainage or other matters are complete laws within themselves. It is an elementary principle that the common law, equitable rules and the statutes cover all subjects that are justiciable. The statutes merely displace or modify

common low or equitable rules or are declaratory of the same, whether these rules be of pleading or of substantive law.

Pleadings are nothing more than presentation of the questions of fact on which the complaining or defending party relies; our statutes on the subject, declaratory of common law, are found in sections 729, 739, and 687 of the Code of 1906 and sections 512, 522, and 465 of Hemingway's Code. They declare this principle is applicable to all courts and to all pleadings.

Besides, the statutes in controversy, embodied in chapter 269 of the Laws of 1914, so far as it affects this case are not susceptible of any such narrow construction, and do not attempt to prescribe rules of pleading.

The petitions in this case set out certain facts, including the proportion of landowners and of lands represented with the allegation that it is to the best interest of the owners of the real property and for the public benefit that the district should be established. All of these and other material allegations are denied and affirmative defenses including plea of *res adjudicata* and of want of jurisdiction in the Leflore chancery court are set up in the answers and counter-petitions.

These answers and pleas are met with a bald proposition that the law in question, chapter 269, of the Laws of 1914, absolutely require the establishment of a district whenever the requisite proportion of landowners is obtained without a counter-petition being presented by a majority of the landowners, owning one-third of the land, or one-third of the landowners owning a majority of the land, be presented to the court praying that the drainage be not made. Such is not the law. Both sections 1 and 2, pages 330 and 332 of the Laws of 1914, provide that the district shall not be established, regardless of the number of signers, unless it is "for the public benefit." Section 1 further provides:

"At the time named in said notice, said board shall meet and hear all property owners within the proposed drainage district who wish to appear and advocate or resist the establishment and if it deem it is to the best interest of the owners of real property within the said district and for the public benefit, that same shall become a drainage district under the terms of this act; it shall make an order upon its minutes establishing same as a drainage district." Laws of 1914, p. 330-31.

Practically the same provision is contained in section 2, page 332, containing the further clear declaration that if no petition, referring to counter petition, is filed, still "it shall be the duty of the board of supervisors, or the chancellor to investigate as provided in the preceding section, and to establish such drainage district, and if it is of the opinion the establishment thereof will be to the advantage of the owners of real property therein and is for the public benefit."

This shows, by a proviso, that it is the duty of the court, even where the point is not raised by counter petitions, to make an investigation of the advisability of the creation of the district and to determine, after such investigation, and by Its decree to voice such determination, of whether or not the creation of the district is for the public benefit.

Therefore, we submit that appellants are clearly within the bounds of their rights in resisting, with or without written pleading, the creation of the district and of assisting the court in its investigation of the facts set forth in the petition especially as to whether or not the drainage district is for the public benefit.

The prescribed statutory proceedings. Section 1 of chapter 269, of the Laws of 1914, provides that when ten per cent., of the owners of property in a proposed drainage district petition a board of supervisors, where the land is all in one county, or the chancery court of

one of the counties where the land is in two or more counties, it shall be the duty of the board, or of the clerk of the chancery court "to publish a notice, in a newspaper having circulation in the proposed district for two successive insertions, directed to the owner of the land proposed to be embraced in the proposed district, giving notice of the intention of the board to take action looking to the organization of the district, and upon the day designated in the notice, the board shall hear all objections, if any are offered to the organization of said district, and unless at the hearing a majority of the landowners owning a majority of the land proposed to be included in the proposed district shall object to the organization, the board shall proceed as hereinafter provided," etc.   In either event, the board can create a preliminary organization of the district, appoint preliminary engineers, commissioners, etc.

When these commissioners and engineers report, under this preliminary organization, a second publication is provided for of two weeks, "calling upon all persons owning property within said district to appear before the board of supervisors, upon a date to be fixed by said clerk, which shall not be earlier than twenty days and not later than forty days after the first publication, to show cause in favor of or against the establishment of the district."

Then after this second publication, there is a second opportunity offered for objectors to appear and resist the establishment of the district.

The provision of the law in question relied upon by opposing counsel, pertain to this second hearing after the second advertisement, the advertisement following the prelinminary organization and report.   the extracts from this law, cited above in this brief, and foundon pages 330, 331, and 332, relate to this second hearing and not to the first hearing as a careful reading of the statute will show.

Appellees, in their brief, deal with but one publication and with but one opportunity for hearing, relying upon the adjudication of the chancery court, at its October Term, without previous publication, to establish their right to all the benefits from having the required majority of landowners and land. This decree was rendered without any sort of notice, actual or constructive, on appellants or any other landowners; and quite a number of landowners, shown by the petition and exhibits have not appeared in this proceeding at all, either in support or opposition to the establishment of the drainage district. These are not before the court at all and have never been given the notice required for the preliminary organization and for the determination of whether or not one-tenth or more of the landowners did sign the original petition.

The statute was not written by a lawyer, very evidently, and is not clear, in many respects, but it does show that there are two publications to be made and two opportunities afforded, one as to whether or not the preliminary organization would be established or created; and the other as to whether or not, in view of all of the facts developed by the preliminary survey, the district should be created or the temporary organization made permanent.

We respectfully submit that opposing counsel lost sight of the requirements as to these two meeting and have sought to blend them in one. We respecfully submit that the petition should be dismissed and the objections thereto sustained.

*Gardner; McBee & Gardner,* for appellants.

Drainage districts must be for the public benefit. Laws 1912, chapter 195, sec. 2, page 214; Laws 1914, chapter 269, sec. 2, page 333; *Jones* v. *Drainage District,* 102 Miss. 796. Whether or not a drainage dis-

trict is for the public benefit is a judicial question. 9 R. C. L. 624; *Sission* v. *Buena Vista Co.,* 128 Iowa, 442; 70 L. R. A. 440; *State* v. *Polk Co.,* 87 Minn. 325, 60 L. R. A. 161.; *Priewe* v. *Wisconsin State Land Co.,* 93 Wisc. 524; 33 L. R. A. 654; *Northern Drainage District* v. *Bolivar County,* 71 So. 382.

The prior judgment rendered by the chancery court for Holmes county is binding upon the parties herein, and is not open to collateral impeachment, and it may be here pleaded, and it operates as an estoppel. 23 Cyc. 1408,; Freeman on Judgments 657; 2 Black on Judgments, page 1203; 15 R. C. L. 629; 15 R. C. L. 641; Black on Judgments, 1217; *Molohan* v. *Cashin,* 101 N. E. 264.

It is not essential to the operation of a judgment or decree as an estoppel that it would be legally right; it is binding, however erroneous. Black on Judgments, 779.

A judgment when offered in evidence does not tend to prove a given fact, it proves, it conclusively, and suffers no contradiction. Black on Judgments, 776. Any fact or question distinctly put in issue, cannot be disputed in a subsequent suit even though the second suit be upon a different cause of action. Black on Judgments, 765; *So. Pac. R. R. Co.* v. *U. S.* 168 U. S. 1, 42 (L. Ed.) 355. A judgment cannot, while it stands in full force and unreversed, be attacked in a collateral proceeding. *Wall* v. *Wall,* 28 Miss. 407; *Cason* v. *Cason,* 31 Miss. 595; *McLeod* v. *Harper,* 43 Miss. 49; *Tarleyton* v. *Cox,* 45 Miss. 438; *Crownwell* v. *Craft,* 47 Miss. 59; *Cary* v. *Dickson,* 51 Miss. 598; *Wallis* v. *Loeb,* 59 Miss. 172. No compulsory nonsuit in Mississipppi. *Ewing* v. *Glidwell,* 3 How. 332; *Winston* v. *Miller,* 12 S. & M. 550. When a bill is dismissed, it is presumed to be on the merits, unless it appear in specific terms that the dismissal was without prejudice. Black on Judgments, 1083.

Between courts of co-equal authority, the first to acquire jurisdiction, will retain it to the exclusion of all others, to the end of the litigation. *Ervin* v. *Mallison,* 65 Kan. 494, 93 Am. St. Rep. 299; *Coleman* v. *State,* 83 290.

A judgment without notice, either actual or constructive to the defendant, in utterly void. *Ex Parte Hafron,* 7 How. 127, *Enos* v. *Smit,* 7 S. & M. 85; *Duncan* v. *Jerchine,* 59 Miss. 550; *Jack* v. *Thompson,* 41. Miss. 49.

*E. L. Mounger,* for appellee.

This is a statutory proceeding and the statute defines the powers of the court and prescribes the method of procedure and pleading. The only question the court can investigate is whether, or not, a proper petition is before the court in case the petition is signed by the requisite number of landowners. If the petition is signed by one-third of the landowners owning a majority of the land in the proposed district, or a majority of the landowners owning one-third of said land, the court has no discretion. It is bound by this fact and it must proceed to organize the district as prayed for, "without further inquiry" unless a counter petition is filed signed by a majority of the landowners owning a third of said land or a third of the landowners a majority of said land. The statute, section 2, chapter 269, Laws of 1914, leaves the matter of such organization entirely with the landowners.

No counter petition was ever filed in this cause. Ten persons appeared and filed objections, but they do not profess to comprise a third of the landowners or to own a majority of the land in the proposed district. In fact, we submit that only five of these objectors are shown by the record to own any land in the district, to-wit: Rogers, Pike, Downer, Otto and Sutphen, and

they own a very small acreage in the district. We submit that the record shows that the appellants, Yazoo & Mississippi Valley Railroad Company, Equen, Morgan, Towens, and Killibrew own no land and are mere interlopers and have no interest or rights in the proceeding whatever.

The objectors have not followed the prescribed method of making objection, and their objections cannot be heard at this state of the proceeding. *Nugent v. Jackson*, 72 Miss. 1040; *Williams v. Cammack*, 27 Miss. 209. It is well settled that the legislative authority to provide for the drainage and reclamation of swamp lands and the prevention of floods may be exercised by the creation of local drainage districts and the delegation to such districts of the power to inaugurate and control systems of drainage and reclamation within their boundaries and to assess the costs of the same against the property benefitted thereby (9 R. C. L. Page 642); and our legislature has exercised this authority and prescribed the procedure. The legislature could authorize the forming of such districts upon such terms as it deemed best. *Drainage District v. Bolivar County*, 111 Miss. 250. The legislature has provided a complete scheme, *Jones v. Drainage District*, 102 Miss. 796. The statute provides the only method by which objection can be made to the organization of the district. *Wilkinson v. Gaines*, 96 Miss, 688; *Owens v. Levee Commissioners*, 74 Miss. 369 9 R. C. L. 631. The right to remonstrate being a statutory right must be exercised in strict compliance with the statute. 7 Eng. Plea. & Prac., p. 217; *Brown v. Beatty*, 34 Miss. 227, 69 Am. Dec. 389, 15 Cyc., p. 980.

As the petition alleged and the affidavits and the certificates of the clerks on file showed, that a third of the landowners owning a majority of the land, and a majority of the landowners owning a majority of the

land had signed the petition, it was proper, though not necessary, that the notices published by the clerk should state that unless at the hearing of the petition a majority of the landowners owning a third of the land proposed to be included in the district or a third of the landowners owning a majority of said land, should object, the court would then and there proceed with the organization of the district as provided by law; and the order for publication directed the clerk to so state in the notice. The law expressly provides that the district shall be so organized unless such protest is filed and the chancellor has no discretion in the matter, and it was but fair that notice of this should be given. Hence, the decree recited that "it appearing" that the necessary one-third had signed; the clerk was directed to give such notice, accordingly. The counsel contend that this was an adjudication by which they were greatly injured and that they were deprived of a hearing and therefore all further proceedings must end in this matter and counsel insist that they are entitled to a hearing, and cite the Constitution of the United States and many authorities to establish their right to a hearing. As a matter of fact the sole purpose of the order complained of was to direct that they be given notice and set a time for their hearing, and from that time to this a very considerable part of the time of the court and commissioner has been consumed in giving them a hearing. Whatever they may have to complain of, it is certain that they have no right to complain on account of their lack of being heard. They have entered their appearance and are in court and have been heard continually and continously. In fact, they are the only persons who have been heard. The entire time of the court and commissioner overruled the objections of the appellants, without hearing the petitioners, he referred the matter to the chancellor, and when the chancellor sustained the commissioner's report and was

about to give the petitioners a hearing, the appellants appealed to this court.

The chancellor designated a date satisfactory to him and the clerk accepted that date and gave the notice accordingly, and the objectors and their counsel have responded to that notice.

The statute expressly recites that the matter shall be heard before the chancery court, or the chancellor in vacation. In nearly every paragraph the statute speaks of the "board of supervisors or the chancellor," and section 1 of both the Acts of 1912 and 1914 expressly provides "whenever the words 'board of supervisors,' " and · section 34 of the Act of 1912, provides that all hearings provided to be heard before the chancellor may be heard before a special commissioner who may be appointed by the chancellor.

We, therefore, submit that there is no merit in the objections that the hearing was in vacation or by the commissioner. The objections to the competencv of the commissioner himself, we submit, are wholly without merit, as the commissioner is shown to be disinterested. The objection stated seems to be that because of his knowledge of, and experience with the drainage laws, he is competent, rather than incompetent.

It is evident that the legislature did not intend that the rejection of a petition for the establishment of a drainage district should preclude the subsequent establishment of such district, or settle the question for all time to come. In fact the legislature has expressly provided otherwise. The statutes, section 4 of the Acts of 1912 and 1914, in the last paragraph both provide that in any proceeding heretofore or hereafter had for the establishment of a drainage district where the plan has been abandoned and the proceedings dismissed, and afterwards proceedings are instituted for the establishment of a district to reclaim the same territory, or a part thereof, the engineer's reports, surveys, stakes

and monuments made in the former proceedings may be used and paid for in the subsequent proceeding.

It is evident that the proceeding for the organization of a drainage district and the establishment of ditches and drains is in the same category as a proceeding to establish a road or highway. ''The rejection of a petition for a. road is no bar to another application for the same road.'' 27 Cyc., page 127; 23 Cyc., page 1244, note 99.

''Apart from the statute the refusal or dismissal of an application for the establishment of a highway will not bar a subsequent proceeding to establish one over the same route, especially if the necessity of the road is different in the two proceedings. 15 Am. & Eng. Enc. Law (2 Ed.), page 389, sec. 14. To the same effect see 25 Cent. Digest, page 1419: ''Refusal of road as bar to subsequent application.''

At the time the decree of the chancery court of Holmes county in the matter of the organization of the drainage district which appears in the record, was rendered, the war with Germany was being waged; the life of the nation and the liberties of the people were being defended; all works of a public nature and sale of all bonds, except bonds for the national defense, were inhibited. Under these circumstances, it was natural that the chancellor concluded that it was not for the best interests of the public that a drainage district should be organized at that time.

Since then the war has ended, and bonds are being sold and, moreover, the damage and loss by floods and overflow to the petitioners and the territory involved has greatly increased. What was then not for the public interest may now be a public necessity. At any rate, the petitioners are entitled to be heard, and are not precluded from being heard by the decree in said matter rendered by chancellor Woodward in May, 1918.

In this decree the chancellor directs that all maps, plats, engineer's reports and surveys and other proceedings in said matter be preserved for future use as provided by section 4, of chapter 269, of the Laws of 1914. So that it is evident that the chancellor did not intend to forever bar the petitioners or the landowners of the territory affected, from relief as prayed for. Since then times and conditions have changed, many of the lands have changed owners, business has revived, the price of cotton has increased and the value of lands affected has more than doubled in value.

We are aware of the fact that the appellants have no right to be heard in this court and that this appeal should be dismissed and this cause remanded to the chancery court of Leflore county for further proceedings until a decree is rendered from which an appeal will lie as held in *Drainage District* v. *Papenee Plantation Co.,* 118 Miss. 493, and *Clark* v. *Strong,* 81 So. 643, but as such action would serve only to delay the cause and would leave the questions raised by these objectors undecided and all to be argued and insisted upon again, we have refrained from making a motion to dismiss the appeal, hoping that these questions may be finally decided and eliminated from the proceeding.

We therefore, respectfully submit that all of the decisions and actions of the chancellor and commissioner in this proceeding should be affirmed and this cause remanded to the lower court for further proceedings toward the establishment of the district as prayed for.

STEVENS, J., delivered the opinion of the court.

Acting under chapter 195, Laws of 1912, as amended by chapters 269 and 271, Laws of 1914, the appellees filed their petition in the chancery court of Leflore county, praying for the organization of a drainage district comprising certain lands in Leflore, Holmes, and

Carroll counties, and to be known as the "Abiaca drainage district" of said counties. Upon this petition the chancellor directed the clerk to give notive by publication to all parties interested, and the publication was made in the three counties named. Ten persons claiming to own lands in the proposed district appeared as objectors, and by a pleading in the nature of an answer to the petition challenged the sufficiency of the petition in law, and, among other things, pleaded that the chancery court of Leflore county is without jurisdiction of this proceeding, for the reason, as alleged, that the same petitioners heretofore exhibited their petition to the chancery court of Holmes county, praying for the organization of a drainage district to be composed of approximately the same territory here to be incorporated into a district; that the chancery court of Holmes county upon due consideration entered a decree dismissing the petition, and that the final decree entered by the chancery court of Holmes county is a bar to this proceeding in Leflore county. A copy of the pleadings and decree in the Holmes county proceeding is exhibited as a part of the answer. The chancellor appointed C. L. Lomax as special commissioner to hear any controversies arising between the parties, and the commissioner passed upon the plea of *res adjudicata,* and made his report to the chancellor, setting forth his ruling and the reasons therefor, and the chancellor, over the objections of the appellants, confirmed the report of the commissioner, thereupon accepted the resignation of the commissioner, and fixed a day in vacation for further proceedings in this cause, but granted an appeal to appellants "to settle the principles of the cause and to avoid expense and delay."

In the final decree rendered by the chancellor in the Holmes county proceeding is the following provision:

"It is further ordered that the clerk of this court preserve all maps, plats, engineer's report and surveys and other proceedings had herein, for future use as provided by section 4, chapter 269, Laws of 1914."

And the decree makes provision for the costs incurred in the first proceeding and the collection thereof.

It does not affirmatively appear to us now that at the hearing fixed by the chancellor a protest or objection was interposed signed by a third of the landowners or by a majority of the landowners, but appellants do enter their appearance, and file certain remonstrances. No final disposition had been made of the petition when the commissioner overruled the plea of *res adjudicata* and when the chancellor confirmed and approved this action of the commissioners but it affirmatively appears that a subsequent date was fixed by the chancellor for further proceedings to be had in accordance with the statute. The appeal here prosecuted is therefore an appeal from an interlocutory decree entered by the chancellor in the course of the proceedings.

There are two contentions in reference to jurisdiction: First, want of jurisdiction is predicated upon section 1, chapter 269, Laws of 1914, which provides:

"If land in more than one county is embraced in the proposed district, the application shall be addressed to the chancery court of any county of such district, and all proceedings shall be had in such chancery court."

Secondly, that the decree entered by the chancery court of Holmes county in the first proceeding is such a former adjudication as constitutes an absolute bar to the present proceeding in Leflore county.

The right of appellants to prosecute this appeal is not challenged by motion to dismiss or otherwise. The chancellor expressly granted an appeal, and both parties ask and insist that the point raised and briefed should

be decided. Without, therefore, passing upon any question as to the right of appellants to appeal from the decree complained of, we proceed to a brief discussion and a decision of the one and only point presented; that is, whether the chancery court of Leflore county had jurisdiction, and whether the plea of *res adjudicata* was properly overruled by the chancellor. No other point could now be decided. The latter part of section 4, chapter 269, Laws of 1914, provides:

"In any proceeding heretofore, or hereafter, had for the establishment of a ditch or drain, or the doing of any other thing deemed necessary when an engineer has been appointed, and has made complete surveys and reports thereof, and for any reason the improvement has been abandoned, and the proceedings dismissed, and afterward proceedings are instituted for the establishment of a ditch or drain or for the doing of anything toward the prosecution of said work, for the reclamation of the same territory surveyed in said former proceedings, or a part thereof, and the territory additional thereto, the engineer's reports, surveys, stakes and monuments made in former proceedings, as far as practicable, or so much thereof as may be applicable, and the cost thereof in said former proceedings, or such parts thereof as used, shall be paid for as a part of the subsequent proceeding in which such report, surveys, stakes and monuments, or a part thereof, are used."

It is the province of the legislature to provide for the establishment of drainage districts and the authority, as well as the procedure, for the creation of the drainage district in this case is governed by the statutes. If the district is to be created out of territory situated in more than one county, the statute provides that the application shall be addressed to the chancery court of either county in which a portion of the lands may be situated, "and all proceedings shall be had

in such chancery court." This means nothing more than that the proceeding shall be had before the chancery court instead of before the board of supervisors. It does not deprive the chancery court of Leflore county of jurisdiction in this case.

The plea of former adjudication is not well taken. The petitioners have proceeded under the authority of the statute, and proceedings are being taken by the chancery court of Leflore county looking to the permanent creation of a drainage district out of well-defined territory. We do not regard this as a kind of proceeding in which the doctrine of former adjudication can be invoked, in the absence of an express statutory provision to that effect. The statutes under review make no provision for such a plea. On the contrary, the quoted provision of section 4, chapter 269, Laws of 1914, clearly indicate that more than one proceeding may be instituted for the establishment of a ditch or drain under the provisions of the statute. The legislature, in contemplating a subsequent proceeding, expressly provides that the engineer's reports, surveys, stakes, and monuments made in the first proceeding shall be paid for as a part of the costs in a subsequent proceeding. The only judgment which the statute gives the force of the usual judgment at law is the order of the board of supervisors or the chancery court establishing a district. This final order establishing a district is by express provisions of section 3, chapter 269, Laws of 1914, given "all the force of a judgment," and from this order any owner of real property is given the right of appeal. The proceeding being statutory, we must look to the statute for the available grounds of remonstrance. A case in point is that of *Heick* v. *Voight*, 110 Ind. 279, 11 N. E. 306. In that case the answer pleaded an alleged former adjudication, and the supreme court of Indiana, by MITCHELL, J., on this point said:

"The statute provides definite and particular grounds of remonstrance. Some of the answers presented, as a bar to the proceedings, grounds of objection which are not specified as grounds of remonstrance. The grounds of remonstrance cannot be enlarged by answers filed before a report of the commissioners is made. No provision is made for pleading a former adjudication. It is therefore to be inferred that the legislature did not intend that one failure to secure the drainage petitioned for should bar all future attempts, if the petitioner was willing to run the hazard of paying the costs in case such subsequent efforts failed of success."

The reason for this ruling is apparent. If an order of the board of supervisors or the chancery court dismissing the petition is given all the force of a judgment, it would operate for an indefinite length of time. A mistake might be made or conditions easily change. This is a statutory and administrative matter in which the public has an interest. Surely a technical rule of the common law should not be invoked to defeat a meritorious internal improvement; and the courts should not so hold in the absence of an express statutory provision on the point. It is well that litigation should be ended, and we do not mean to say that a case could not arise indicating a fraudulent repetition of the same proceeding or an imposition upon the court and a possible case of estoppel.

The decree appealed from will be affirmed and the cause remanded for further proceedings.

*Affirmed and remanded.*

ETHRIDGE, J. (dissenting).

I do not think the court has jurisdiction of the appeal so as to authorize it to decide the cause, and that the appeal should be dismissed by the court of its own motion. The appellees in their brief say:

"We are aware of the fact that the appellants have no right to be heard in this court, and that this appeal should be dismissed, and this cause remanded to the chancery court of Leflore county for further proceedings until a decree is rendered, from which an appeal will lie as held in *Drainage District* v. *Napenee Plantation Co.*, 118 Miss. 493, 78 So. 709, and *Clark* v. *Strong*, 81 So. 643, but as such action would serve only to delay the cause and would leave the questions raised by these objectors undecided and all to be argued and insisted upon again, we have refrained from making a motion to dismiss the appeal, hoping that these questions may be finally decided and eliminated from the proceeding."

In the case of *Drainage District* v. *Napenee Plantation Co.*, above cited, this court held that no appeal lies from the order of the chancellor complained of and sustained a motion to dismiss the proceeding because no appeal would lie from an order of this kind. In *Clark* v. *Strong*, 81 So. 643, upon motion to dismiss, the court said:

"The statute under which the [drainage] district is being formed does not provide for the appeal here attempted to be taken, and the orders and decrees made in the process of the creation of a drainage district were not within the general statutes regulating appeals from the chancery court."

It is well settled in Mississippi that the right of this court to entertain appeals is dependent upon statute, and where there is no appeal allowed by statute this court has no jurisdiction to entertain an appeal. It is equally well settled in this state that jurisdiction cannot be conferred upon this court by consent so as to give it a right to entertain an appeal not provided for by law. In *Ward* v. *Whitfield*, 64 Miss. 754, 2 So. 493, the court held that where no appeal is provided for by statute and the lower court grants an appeal authorized by law that this court will apply the corrective

by dismissing of its own motion such appeals.. Cooper, C. J., delivering the opinion of the court, at page 761 of 64 Miss., 2 So. 495, said:

"We would have disposed of these appeals with a simple order of affirmance but for the opportunity afforded by them to again admonish chancellors, that appeals from interlocutory decrees ought not to be granted unless the principles of the case can be settled upon such appeals. In the progress of chancery pro-. ceedings very many interlocutory decrees are made, and it is but natural that parties should desire to avail themselves of every opportunity afforded for appeals. But the statute authorizing appeals from such decrees can have application only when the principles governing the cause may be settled by the appeal, or where the chancellor doubts the correctness of his conclusion, and costs and delay may be avoided by the appeal. It is not the purpose of the statute to afford appeals to this court merely because litigants are dissatisfied with such interlocutory decrees; ordinarily, the interests of all parties will be advanced, and justice more speedily and economically administered by proceeding to final decree. Unless the evil of frequent appeals is removed by the action of the lower courts, this court will apply the corrective by dismissing *ex mero motu* appeals improvidently granted."

In *Greve* v. *McGee,* 92 Miss. 190, 45 So. 706, the court of its own motion dismissed an appeal to this court not allowed by the chancellor.

So I say the court of its own motion ought to dismiss the appeal in this case. The opinion rendered by the majority does not hold that the court has jurisdiction by the statute, and the above cases are not overruled, but the court has entertained the appeal as a matter of mere grace and favor to the litigants. If I understand them, the majority reserved the right to dismiss such appeals whenever a motion is made to

do so, and will consider themselves bound by the cases quoted from the appellee's brief. In my opinion all litigants as to appeals should have equal rights before this court, and appeals should be entertained as of right and not otherwise. In legal effect the opinion of 'the majority is not an opinion of this court, as such, but is a mere opinion of five learned lawyers who happen to occupy positions in this court. I prefer not to express my own opinion on the merits presented, and it seems to me that the question as to whether the question presented is a judicial question is open to doubt. The creation of a drainage district seems to be a legislative function, and it is doubtful whether the controversy is a judicial one, at least I deem it sufficiently so to have that question determined after argument and investigation in a real suit where the question is presented.