GREEN RIVER LUMBER CO. *et al. v.* POMPEY LAKE DRAINAGE DIST.

[91 South. 393. No. 22629.]

DRAINS. *Order of dismissal of petition for creation of drainage district held not res adjudicata in subsequent proceedings.*

Where a petition to create a drainage district is dismissed before the final hearing, and no order is entered creating the district,

such order of dismissal cannot be pleaded in bar of a subsequent application to create such drainage district, even though the same territory is embraced in each petition. Only final order creating a drainage district has the force of a judgment. *Equcn* v. *Arterbury,* 121 Miss. 76, 83 So. 406, cited.

APPEAL from chancery court of Quitman county.
HON. G. E. WILLIAMS, Chancellor.
Proceedings for the creation of the Pompey Lake Drainage District, opposed by the Green River Lumber Company and others. From order providing for the creation of the district, the Green River Lumber Company and others appeal. Affirmed.

*Gore & Pague,* for appellants.

The case of *Reinecke* v. *Reinecke,* 63 So. 215, has no application in this case for the reason that the opinion is simply a holding by the court that a decree *pro confesso* must follow the prayer of the bill, and that when only a part of the prayer is granted, the order is erroneous and does not adjudicate the rights of the parties. Counsel for the appellees confuse our argument with reference to the report and adjudication of Mr. Mack, the commissioner, with the original order made by the court, directing publication of notices.

The *Camp Creek Drainage case,* 71 So. 320, holds that protestants may attack the truth of statements made in the initial order of the board of supervisors, for that is the very purpose of giving notice to property-owners. It is put in issue by this means. The *Spring Creek Drainage case,* 87 N. E. 394, is the only authority we deem it necessary to cite in support of our contention that the admission of parol testimony to contradict the findings of the commissioner was an error. The court there said: "Where a decree of judgment order is attacked in a collateral proceeding finding that the parties have been duly notified, such finding, like any other judicial determination, cannot be contradicted, varied, or explained by parol or other

evidence beyond or outside the record itself. The commissioner is empowered by section 34 of the act to make findings of law and fact and we do not believe any party may be permitted to contradict these findings, except in direct proceedings, as by exceptions to the report of the commissioners on the part of the objectors, and we think these would be limited to questioning the admissibility of evidence heard by the commissioner. For a much stronger reason, we think these findings should not have been contradicted by parol testimony, introduced in behalf of the petitioners. We submit, also, that the petitioners are estopped to deny the truth of the proof made by them before the commissioner.

We submit that the holding of this court in the Arterberry case, narrows too much, the defenses which may be interposed by objectors to the formation of drainage cases and that it has no application in the case at bar. The case of *Molohon* v. *Cashin,* 101 N. E. 264, we think, announces the sounder doctrine than the Indiana case, cited as authority by this court. Other reasons in support of our contention that the Arterberry case does not apply, will be submitted to the court in oral argument.

*E. O. Black,* for appellees.

Our position in this matter is that the rules governing an ordinary suit in the chancery court do not apply in the matter of the hearing of a petition to organize a drainage district, but that the procedure as laid out in the act under which the district is being organized, and that the act under which the district is being organized must be followed literally, and there is no plea or motion that might be filed or objection, except such as are provided by the act, and that the order of the chancellor directing the clerk to publish notices or the order of dismissal, or any other order made or that might have been made prior to the entering of the order establishing the district, was not a decree, and would have no binding effect against anyone

so as to be set up as a former adjudication of the facts recited in the order; therefore, we contend that there was no adjudication in either of the cases until the final decree establishing the district in cause 1877, which was such a decree that could be the basis for a plea of *res adjudicata* (118 Miss. 493, 78 So. 709).

Under the authority of chapter 195, as amended by chapter 269, Laws of 1914, and chapter 159 of the Laws of 1918, there might be any number of petitions pending at the same time in the same court embracing the same territory, signed by the landowners within the territory embraced within the petition, some of which landowners might have signed all of said petitions and none of which would be subject to abatement because the other was pending. The court might take them up one by one, assuming that there was half-dozen petitions, and on proof develop the fact that the first five of said petitions did not have the requisite number of signers, owning the required number of acres of land, enter an order dismissing the first five and then take up the sixth and last petition and on proof find that the petition conformed to chapter 195 and the amendments thereto in every respect, and that it was signed by a majority thereto in every respect, and that it was signed by a majority of the landowners owning a third of the land, or a third of the landowners owning a majority of the land, and that the drainage proposed was conducive to public health and would promote agriculture. Then the court would be authorized and it would be the duty of the court to enter a decree establishing a district irrespective of any plea in abatement or *res adjudicata,* unless there should be presented a petition signed by a majority of the landowners, owning a majority of the land and this is the only successful petition or objection that could have been made in the case at bar, the territory was within a drainage district already established; therefore it was necessary for the petition to contain a third of the landowners, owning a majority of the land, or a majority of the landowners owning a third of the land; there-

fore, this petition was not subject to any objection or defense, except the petitioners might by proper objection be required to show by competent evidence that the statute was complied with, which we think the record abundantly shows. This position is certainly upheld by the latter part of section four, chapter 269, Laws of 1914, as amended by chapter 159, Laws of 1918. We think that there can be no adjudication, and could have been no adjudication in this case until the decree established the district, and that the court correctly overruled the plea of *res adjudicata,* and entered the decree establishing the district and cited in support of this conclusion: *Equen et al.* v. *Arterbury, et al.,* 121 Miss. 76, 83 So. 406; Sections two and four, chapter 195, Laws of 1914; Section one, chapter 159, Laws of 1918.

The *Equen case, supra,* is very much similar to the case at bar, but the case at bar, as made by the record, is much stronger in favor of appellees than the *Equen case, supra.* In that case the plea of *res adjudicata* was filed setting up the fact that the same petition describing the same area had been filed in Holmes county, and the matter had been gone into before the court and an order entered dismissing the petition after a hearing, but the court said in that case: "We do not regard this as a kind of proceeding in which the doctrine of former adjudication can be invoked, in the absence of an express statutory provision to that effect. The statutes under review make no provision for such a plea. On the contrary the quoted provision of section four, chapter 269, Laws of 1914, clearly indicate that more than one proceeding may be instituted for the establishment of a ditch or drain under the provision of the statute. The legislature in contemplating a subsequent proceeding expressly provides that the engineer's reports, survey stakes, and monuments made in the first proceeding, should be paid for as a part of the cost in a subsequent proceeding. The only judgment which the statute gives the force of the usual judgment at law is the order of the board of supervisors or the chancery court establishing a district. Fur-

ther on in the same case the court says: "If an order of the board of supervisors or the chancery court dismissing the petition is given all the force of a judgment, it can operate for an indefinite length of time. A mistake might be made or conditions easily changed. This is a statutory and administrative matter in which the public has an interest. Surely the technical rules of the common law should not be invoked to defeat a meritorious internal improvement; and the court should not so hold in the absence of an express statutory provision on the point.

We submit that the authority cited by counsel for appellants are not in point, and have no application to a proceeding to establish a drainage district, and the decree of the chancellor establishing Pompey Lake drainage district of Quitman county should be upheld and this case affirmed.

*Holmes & Sledge,* for appellee.

Associate counsel has ably presented this matter to the court and called the court's special attention to the *Equen case, supra,* in which case this court, through his Honor, Judge STEVENS, called especial attention to the fact that section 4 of chapter 269, Laws of 1914, provides that: "When proceedings are dismissed and afterwards proceedings are instituted again for the reclamation of the same territory, etc., clearly indicating that many proceedings might be instituted regardless of the fact that some prior proceeding might have been dismissed, showing that the legislature had in mind or contemplation just such a case or condition as the one at bar.

The act under which this district was created provides clearly how one may make objections or defense to the organization of a drainage district. Section 2 provides that when the matter comes on for hearing on publication as provided for, if it appears that the jurisdictional facts exist, that the chancellor shall make an order establishing district, etc., provided, however, if upon that day a petition signed by a majority of the landowners owning one-

third or the landowners owning a majority of the land, be presented to the chancellor praying that the improvement be not made, then, and in that event only, is it the duty of the chancellor to suspend proceedings and make further investigations, provided of course that the establishment of such a district is necessary for the promotion of public health and for agricultural purposes. In other words, the drainage law is complete within itself and provides the complete remedies and we are bound by its provisions and not by any arbitrary general rules of practice which are in conflict therewith, and we therefore respectfully submit that none of the authorities cited by appellants are in point, in the case at bar.

However, for the sake of argument, admit that appellants are correct in their contention that the general rules of chancery procedure shall apply in drainage districts, regardless of the statutory provisions clothing the chancery courts with special authority in these matters, still their theory of this could not control in this case because the court never in the first proceeding had any jurisdiction of the subject-matter, because as stated *supra,* this district could only be organized when complying with the provisions of section 4484, Hemingway's Code, the lands being already within a drainage district, and there is no effort anywhere in proceedings under 1877 to show that all of the jurisdictional facts were not fully met in said cause and it is conclusively shown by the record at pages 108 to 112 and at numerous other places in the record, and by count of names and landowners, that there was neither a third of the landowners owning a majority of the acreage, or a majority of the landowners owning one-third of the acreage, in cause No. 1858. It was therefore abandoned and dismissed and a new cause of action presented.

The record discloses in this case that the lands of the Pompey Lake drainage district are immediately west of the levee of the Indian Creek drainage district, the effect of which levee this court is thoroughly familiar with, having considered same in the case of *T. M. Garrett et al.* v.

*Indian Creek Drainage District,* in this court, and this is an effort on the part of the landowners west of said levee to reclaim this vast area for agricultural purposes, while appellants, representing considerably less than three per cent. of the landowners in the district, are seeking to confuse the issues and read into the drainage law matters of defense which are not provided for therein. Nowhere is it charged that proceedings under cause No. 1877 of the chancery court of Quitman county, are not in full accordance with the statutes in this behalf provided.

We, therefore, respectfully submit that this cause should be affirmed and petitioners allowed to proceed in the reclamation of their lands.

ETHRIDGE, J., delivered the opinion of the court.

A number of landowners filed a petition in the chancery court praying for the creation of a drainage district to be knokn as the Pompey Lake drainage district, consisting of lands lying in Quitman and Tunica counties, alleging that they were landowners of the district constituting more than one-third of the landowners owning more than one-half of the land in said district, and publication was made as provided by statute to the landowners to appear before the chancery court to oppose or advocate the creation of such district, and a commissioner was appointed to take evidence and report his finding of law and fact to the court; and he reported to the court that the petition was sufficient and was signed by more than a third of the landowners owning a majority of the lands in said district. Before the cause was heard on its merits the petitioners discovered that they did not own a majority of the land in the district, and circulated a new petition, being the original petition, plus new signers, before the court convened to pass upon the matter, and at the session of the court took a dismissal of the original petition and the proceedings thereunder, and filed the new petition, and had publication made thereunder to the landowners to appear at

the date named to show cause in favor of or against the creation of said district. The appellants appeared, and first set up a motion to strike from the present petition the first nine pages thereof on the ground that it consti- tuted the original petition, and should be remanded to the files in that case, which motion was overruled. They then filed a plea of *res adjudicata,* setting up that the territory embraced in the present petition was identical with that embraced in the former petition, in which a dismissal was taken, and that such dismissal constituted an adjudication against the creation of the district. This contention was overruled by the chancellor and an order entered for the creation of the district as prayed for, and from this order this appeal is prosecuted, and the contention made that the former dismissal constituted an adjudication against the contention of the petitioners. We think this plea with- out merit, and that this case is governed by the decision of this court in *Equen et al.* v. *Arterbury et al.,* 121 Miss. 76, 83 So. 406, in which case it was decided that a judgment of the court in such case, other than one finally establish- ing the district, was not *res adjudicata.*

The judgment of the chancery court will therefore be affirmed.

*Affirmed.*